**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

NICE CAR, INC.,

     Debtor.

CASE NO. 17-15001-RBR
CHAPTER 11

---

### DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL

#### (Emergency Hearing Requested)

#### Statement of Exigent Circumstances

By this Motion, the Debtor seeks authority to use cash collateral to continue to operate its business in the ordinary course and preserve the value of its estate. Absent the relief sought herein, the Debtor will be unable to pay the ordinary and necessary expenses associated with the continued operation of its business and will be unable to reorganize successfully under chapter 11. The Debtor respectfully requests that the Court conduct a hearing on this Motion within two (2) business days of the filing of this Motion, consistent with Local Rule 9013-1(F), as the Debtor believes that a hearing on this Motion is needed as soon as possible in order for it to continue to operate. The Debtor respectfully requests that the Court waive the provisions of Local Rule 9075-1(B), which requires an affirmative statement that a *bona fide* effort was made in order to resolve the issues raised in the Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution given the number of parties that may have an interest in the matter. Notwithstanding this request, the Debtor states that it has reached a resolution of cash collateral issues with the Lender as set forth herein.

Nice Car, Inc., (the "*Debtor*"), by and through its proposed undersigned counsel, files this emergency motion (the "*Motion*") requesting this Court enter an interim order (the "*Interim Order*"), substantially in the form attached hereto as Exhibit "A", and a final order (the "*Final Order*") pursuant to sections 105, 361, 362, 363, 503, 507 and 552 of chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*"), Rules 2002, 4001, 6004 and 9013 of the Federal

1

Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), Rules 4001-2, 9013-F and G, and 9075-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida (the "*Local Rules*"), and this Court's *Guidelines for Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing* (the "*Guidelines*"), (i) authorizing the Debtor to use cash collateral, (ii) granting adequate protection in connection therewith, and (iii) scheduling an emergency interim hearing and final hearing on the Motion. In support of the Motion, the Debtor relies upon the Declaration of Steven Kerzer in Support of First Day Motions filed contemporaneously herewith (the "*First Day Declaration*") and respectfully states as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Disclosures Under Bankruptcy Rules, Local Rules and Guidelines

3.      Pursuant to Bankruptcy Rule 4001(b), Local Rules 4001-2, 9013-1(F) and (G), and the Guidelines, the Debtor submits the following list and summary of the material terms of its proposed use of cash collateral pursuant to the proposed Interim Order, setting forth the location of such material terms[1] in the Interim Order.

| **Material Provision** | **Summary of Material Terms** | **Para(s). of Interim Order** |
|---|---|---|
| Cash Collateral | Any collateral constituting "Cash Collateral", as such term is defined in Section 363 of the Bankruptcy Code. | E |
| Entities with an Interest in Cash Collateral<br><br>(Fed. R. Bankr. P. | The Lender. | E |

---

[1]      The following summary contains truncated descriptions of material terms and is qualified in its entirety by the actual terms of the proposed Interim Order. Capitalized but undefined terms shall have the meanings given to such terms in the Interim Order and/or this Motion, as applicable.

**SLATKIN & REYNOLDS, P.A.**
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880

| | | |
|---|---|---|
| 4001(b)(1)(B)(i) | | |
| Purpose for Use of Cash Collateral

(Fed. R. Bankr. P. 4001(b)(1)(B)(ii)) | The Debtor may use the Cash Collateral during the Interim Period solely to pay the ordinary, necessary and reasonable expenses of operating its business exclusively in accordance with and subject to the Budget. | 8 |
| Budget

(Fed. R. Bankr. P. 4001(b)(1)(B)(ii)) | The Budget shall include a four (4) month estimate of the costs and expenses (including all payments authorized hereunder) of administering the Case (including payments under the Carve-Out as provided herein). Commencing on June 5th, 2017, and continuing on the fifth day of every month thereafter (or the next business day if such day is not a business day), the Debtor shall be required to deliver to the Lender: (i), an updated Budget providing an estimate of the costs and expenses of administering the Case for the following four (4) month period (provided that the Debtor shall not be permitted to modify any estimates provided in the prior month's Budget without the express written consent of the lender, but may only add to the Budget an estimate for costs and expenses to be incurred in the months not covered by any already-delivered Budget), and (ii) a monthly variance report comparing the actual receipts and disbursements of the Debtor with the receipts and disbursements estimated in the Budget.

The Debtor's actual disbursements for any given month during the Interim Period shall not exceed the sum of (x) 120% of the disbursements projected for such month in the Budget, plus (y) (except for the first month) any unused portion of the disbursements projected for the prior month in the Budget (the "*Permitted Budget Variance*"). The Budget and any modification to, or extension, amendment or update of the Budget, shall be in a form and substance acceptable to the Lender in its sole discretion. | Exhibit 1, 7, 8 |
| Duration of Use of Cash Collateral / Termination Events / Exercise of Remedies

(Fed. R. Bankr. P. 4001(b)(1)(B)(iii)) | The Debtor's authorization, and the Lender's consent, to use Cash Collateral shall terminate on the earliest to occur of (the "*Termination Date*"): (i) the first business day that is 30 days after the Petition Date (unless such period is extended by the Lender in the Lender's sole discretion) if the Final Order has not been entered by this Court on or before such date; (ii) the entry of an order of this Court terminating such right; (iii) the dismissal of the Case or the conversion of the Case to a case under chapter 7 of the Bankruptcy Code; (iv) the appointment in the Case of a trustee or an examiner with expanded powers; or (v) the expiration of the Remedies Notice Period following the delivery of a Termination Declaration (each as defined herein) by the Lender, according to the procedures set forth in Paragraph 12 below (the period during which the Debtor is authorized to use Cash Collateral pursuant to this Interim Order being referred to as the "*Interim Period*").

The following events shall each constitute an event of default | 3, 11, 12 |

3

**SLATKIN & REYNOLDS, P.A.**
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880

hereunder, (collectively, the "*Events of Default*"):

a.        the violation of or failure by the Debtor to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order (including the Budget);

b.        the obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest, mortgage or other lien on all or any portion of the Postpetition Collateral which is equal or senior to any security interest, mortgage or other lien of the Lender, or (ii) entitled to priority administrative status which is equal or senior to that granted to the Lender herein;

c.        the institution of a Challenge (as defined below) after a party in interest has been granted standing by order of the Court;

d.        any lien or security interest purported to be created under the Prepetition Loan Documents shall cease to be, or shall be asserted by the Debtor not to be, a valid and perfected lien on or security interest in any Prepetition Collateral, with the priority required by the Prepetition Loan Documents or herein;

e.        the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Postpetition Collateral, or (ii) with respect to any lien of or the granting of any lien on any Postpetition Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtor;

f.        the reversal, vacatur, or modification (without the express prior written consent of the Lender, in its sole discretion) of this Interim Order; dismissal of the Case or conversion of the Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with enlarged powers or other responsible person;

g.        the sale of any portion of the Debtor's assets outside the ordinary course of business without the prior written consent of the Lender, in its sole discretion;

h.        the Debtor's failure to obtain entry of the Final Order by May 26, 2017;

i.        the Debtor's failure to file a plan of reorganization in form and substance satisfactory to the Lender in all respects (the "*Plan*") by May 26, 2017;

j.        the Debtor's failure to obtain confirmation of the Plan by July 31, 2017;

k.        the granting of any motion providing for reconsideration, stay, or vacatur of this Interim Order; or (1) the Debtor shall assert in any pleading filed in any court that any material provision of this Interim Order is not valid and binding for any reason, or (2) any material provision of this Interim Order shall, for any reason, cease to be valid and binding without the prior written consent of the Lender.

**SLATKIN & REYNOLDS, P.A.**
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880

|  | Immediately upon the occurrence and during the continuation of an Event of Default, the Lender may declare a termination, reduction or restriction of the ability of the Debtor to use any Cash Collateral (any such declaration shall be referred to herein as a "*Termination Declaration*"). The Termination Declaration shall be given by e-mail or facsimile (or other electronic means) contemporaneously to counsel to the Debtor, counsel to any Statutory Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "*Termination Declaration Date*"). On the Termination Declaration Date, the Debtor's right to use Cash Collateral shall automatically cease, except as provided herein. Within seven (7) business days after the Termination Declaration Date (the "*Remedies Notice Period*"), the Debtor and/or the Statutory Committee shall be entitled to seek an emergency hearing with the Court seeking an emergency determination of whether an Event of Default has occurred and/or any other appropriate relief related to the Debtor's continued use of Cash Collateral on a non-consensual basis, with the rights and objections of all parties reserved with respect thereto. Unless the Court determines otherwise during the Remedies Notice Period (which shall be extended, if necessary, to accommodate the Court's calendar for an emergency hearing), the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice to or order of the Court, and the Debtor shall no longer have the right to use Cash Collateral and the Lender shall be permitted to exercise any and all remedies set forth herein or in the Prepetition Loan Documents, as applicable, and as otherwise available at law against the Postpetition Collateral, without further order of or notice, application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the Postpetition Collateral or any other rights and remedies granted to the Lender with respect thereto pursuant to the Prepetition Loan Documents or this Interim Order, as applicable. In addition, the Lender shall have the right to file an emergency motion with the Court during the Remedies Notice Period seeking, among other things, relief from the automatic stay otherwise applicable to the Lender so as to be able to exercise its rights and remedies at law or in equity to satisfy the Prepetition Obligations, the Superpriority Claim, the Adequate Protection Liens, and the Prepetition Loan Documents and any other obligation under this Interim Order. |  |
| Proposed Adequate Protection<br><br>(Fed. R. Bankr. P. 4001(b)(1)(B)(iv)) | On account of the Debtor's use of the Cash Collateral during the Interim Period, the Lender is granted the following adequate protection:<br><br>Adequate Protection Liens.  Subject to the Carve-Out (as defined herein) in all respects and the terms of this Interim Order, pursuant to sections 361, 363(e) and 364 of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as adequate protection for any | 9 |

**SLATKIN & REYNOLDS, P.A.**
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880

postpetition diminution in value of the Lender's interests in the Prepetition Collateral (including the Cash Collateral) (any "*Diminution in Value*"), the Lender is hereby granted additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens (the "*Adequate Protection Liens*"), without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all property, whether now owned or hereafter acquired or existing and wherever located, of the Debtor and the Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), other equity or ownership interests, including equity interests in any subsidiaries and nonwholly-owned subsidiaries, money, investment property, and causes of action (including causes of action arising under section 549 of the Bankruptcy Code), and solely subject to entry of the Final Order, any causes of action (except as provided above) under sections 502(d), 544, 545, 547, 548, 550, 551, 553 or 724(a) of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code (collectively, the "*Avoidance Actions*") and proceeds thereof or property or cash recovered pursuant to Avoidance Actions, and all products, proceeds and supporting obligations of the foregoing, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located (collectively, the "*Postpetition Collateral*"), having the priority set forth in Paragraph 9(b) below. For the avoidance of doubt, the Adequate Protection Liens shall not include a lien on the Avoidance Actions until entry of the Final Order.

Priority of the Adequate Protection Liens. Subject to the terms of this Interim Order, the Adequate Protection Liens shall be junior only to the (A) Carve-Out, (B) the Prepetition Liens, and (C) other unavoidable liens, if any, existing as of the Petition Date that are senior in priority to the Prepetition Liens. The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Postpetition Collateral (including any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code). Subject to the Carve-Out in all respects

6

**SLATKIN & REYNOLDS, P.A.**
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880

| | | |
|---|---|---|
| | and the terms of this Interim Order, the Adequate Protection Liens shall be enforceable against and binding upon the Debtor, its estate, any subsequently appointed trustee under either Chapter 7 or 11 and any successors thereto.<br><br>Superpriority Claim.  Subject to the Carve-Out in all respects and the terms of this Interim Order, as further adequate protection, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, the Lender is hereby granted an allowed administrative expense claim in the Case ahead of and senior to any and all other administrative expense claims in such Cases to the extent of any postpetition Diminution in Value (the "*Superpriority Claim*").<br><br>Priority of the Superpriority Claim.  Subject to the Carve-Out in all respects, the Superpriority Claim will not be junior to any claims.<br><br>Monthly Adequate Protection Payment.  The Debtor shall pay a monthly adequate protection payment of $10,000.00 (the "*Adequate Protection Payment*") to the Lender on or before the 20th of each month (or the first business day thereafter if the 20th falls on a Saturday, Sunday or Holiday). The first Adequate Protection Payment shall be due on or before May 20th, 2017.<br><br>Reporting Requirement.  In addition to, and without limiting, whatever rights to access the Lender has under the Prepetition Loan Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtor shall permit representatives, agents, and employees of the Lender to: (i) have access to and inspect the Debtor's assets; (ii) examine the Debtor's books and records, and (iii) to discuss the Debtor's affairs, finances, and condition with the Debtor's officers and financial advisors. | |
| Carve-Out | The Adequate Protection Liens, the Superpriority Claim and the Adequate Protection Payment, to the extent granted hereunder to and for the benefit of the Lender, shall be subject and subordinate to the following expenses (collectively, the "*Carve Out*"): (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code (and, with respect to the U.S. Trustee, in such amount as is agreed to by the U.S. Trustee or determined by the Court) plus interest at the statutory rate; and (ii) all accrued but unpaid costs, fees, and expenses incurred by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code to the extent allowed at any time whether allowed by interim order, procedural order, or otherwise in an aggregate amount not to exceed $90,000; provided, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement, or compensation described in preceding clause (ii). | 10 |
| Acknowledgment of Indebtedness and Liens; Binding Effect; | Subject to Paragraph 16 hereof, each stipulation, admission, and agreement contained in this Interim Order including, | 14, 15 |

7

**SLATKIN & REYNOLDS, P.A.**
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880

| Challenge Period | without limitation, the Debtor's Stipulations, shall be binding upon the Debtor, its estate and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) under all circumstances and for all purposes, and the Debtor is deemed to have irrevocably waived and relinquished all Challenges (as defined herein) as of the Petition Date.

Nothing in this Interim Order shall prejudice the rights of a Statutory Committee, if granted standing by the Court, and, solely if no Statutory Committee is appointed, any other party in interest granted standing by the Court (other than the Debtor and/or its successors) to seek, solely in accordance with the provisions of this paragraph 16, to assert claims against any the Lender or the Lender Parties on behalf of the Debtor, its estates, or its creditors, or to otherwise object to or to challenge the findings, Debtor's Stipulations, or any other stipulations or findings herein, including, but not limited to those in relation to: (a) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of Lender; (b) the validity, allowability, priority, fully secured status or amount of the Prepetition Obligations under the Prepetition Loan Documents; (c) any liability of the Lender with respect to anything arising from the Prepetition Loan Documents or the Debtor; and (d) any claims against the Lender and Lender Parties under Chapter 5 of the Bankruptcy Code. A party in interest, including any Statutory Committee (if appointed), that has been granted standing must commence, as appropriate, an adversary proceeding raising such claim, objection or challenge, including, without limitation, any claim or cause of action against the Lender (each, a "*Challenge*") within the earlier of (i) thirty (30) calendar days following the formation of a Statutory Committee (if appointed), and (ii) if no Statutory Committee is appointed, forty-five (45) days from the Petition Date (together, the "*Challenge Period*"). The Challenge Period may only be extended for cause shown on motion and hearing brought prior to its expiration, or by written consent of the Lender, in its sole discretion. Only those parties in interest (including, without limitation, the Statutory Committee, if appointed), that have properly initiated a Challenge challenging the Prepetition Obligations under the Prepetition Loan Documents, the Prepetition Liens, or any liability of the Prepetition Lender prior to the expiration of the Challenge Period shall be permitted to participate in the prosecution of such Challenge. As to (i) any parties in interest, including the Statutory Committee (if appointed), who fail to file a Challenge prior to the expiration of the Challenge Period, or if any such Challenge is filed and overruled or dismissed and (ii) any and all matters that are not expressly the subject of a timely Challenge: (A) any and all such Challenges by any party (including, without limitation, any Statutory Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in this Case, and any chapter 7 trustee and/or examiner or other estate representative | |

8

**SLATKIN & REYNOLDS, P.A.**
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880

| | appointed in any successor Case), shall be deemed to be forever waived, released and barred, (B) all unchallenged matters, Debtor's Stipulations, findings, waivers, releases, waivers, releases, affirmations and other stipulations, including as to the validity, perfection, priority, allowability, enforceability or nonavoidability as to the Prepetition Lender's claims, liens, and interests, shall be of full force and effect and forever binding upon the Debtor, the Debtor's bankruptcy estate and all creditors, interest holders, and other parties in interest in this Case and any successor Case, and (C) any and all claims or causes of action against the Lender and the Lender Parties relating in any way to the Debtor shall be forever waived and released by the Debtor's estate, all creditors, interest holders and other parties in interest in this Case and any successor Case. | |
|---|---|---|
| Limitation of rights of parties under section 506(c); grant of benefits of section 522(b) and limit on "equities of the case" | Subject to entry of the Final Order, the Lender shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b) and the "equities of the case" exception shall not apply.<br><br>Subject to entry of the Final Order, the Debtor shall not assert a claim under Bankruptcy Code section 506(c) for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Lender upon the Prepetition Collateral. | 20, 21 |

### Procedural and Factual Background

4.      On April 24, 2017 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      No examiner or trustee has been appointed pursuant to 11 U.S.C. §§ 1107 or 1108.

7.      The Debtor is in the business of selling used automobiles to consumers.      The Debtor's business is located in Hollywood, Broward County, Florida and serves customers throughout the South Florida area.

8.      The Debtor has been in business since 1977. The Debtor has sold tens of thousands of cars in its 40 year existence, mostly to lower income individuals, many of whom have or had

9

**SLATKIN & REYNOLDS, P.A.**
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880

problems obtaining regular credit or could not otherwise afford vehicles. This type of automobile business is often referred to as a "buy here, pay here" automobile dealer.

9.     Steven Kerzer is the 100% shareholder of the Debtor and the Debtor's president. For additional factual background on the Debtor, the Debtor refers readers to the First Day Declaration, which is adopted as if set forth in full herein.

## The Secured Lender and History of Loan Transactions

10.     The Debtor is currently indebted to Stirling Financial LLC (the "*Lender*") in the sum of $20,978,653.00 evidenced by (i) that certain Consolidated Note dated as of October 1, 2014 executed by Debtor in favor of Lender in the original principal amount of $21,986,000.00 (the "*Consolidated Note*"), which Consolidated Note consolidated the following two notes previously executed by Debtor in favor of Lender: (A) Promissory Note dated January 2, 2004, in the original principal amount of $5,000,000.00 and (B) Promissory Note dated August 8, 2007 in the original principal amount of $12,000,000.00 (the "*Prior Notes*" and together with the Consolidated Note, the "*Notes*"); (ii) that certain Agreement dated as of October 1, 2014 by and between Debtor and Lender; and (iii) that certain Consolidation, Modification, Ratification and Assumption Agreement dated as of October 1, 2014 by and between Debtor and Lender (all obligations evidenced by the foregoing and all other prepetition obligations owing from Debtor to Lender, collectively, the "*Prepetition Obligations*").

11.     The Prepetition Obligations are secured by a Security Agreement, dated January 2, 2004 (as amended, the "*Security Agreement*"), pursuant to which the Debtor granted to the Lender a security interest in the following collateral (all collateral pledged under such Security Agreement, the "*Security Agreement Collateral*"): intangibles and all proceeds thereof, including but not limited to all accounts, chattel paper, documents, instruments, promissory notes and tangibles, including inventory (unless specifically excluded).

12.    As further security for the Prepetition Obligations Debtor entered into two Assignment of Purchase Contracts dated as of October 1, 2014 and March 24, 2009 (the "*Assignment Agreements*"), pursuant to which Assignment Agreements the Debtor collaterally assigned to the Lender all of its right, title and interest in certain Purchase Contracts (as defined in the Assignment Agreements) (together with the Security Agreement Collateral, the "*Prepetition Collateral*").

13.    The Lender has properly perfected its security interests in and on the Prepetition Collateral by taking possession of, or obtaining control over, certain assets, and/or by filing UCC-1 financing statements, mortgages, deeds of trust, or other required documents against the Debtor and such Prepetition Collateral in the proper state or county offices for the perfection of such security interests and liens.

### The Debtor's Use of Cash Collateral

14.    The cash collateral proposed to be used by the Debtor may include cash-on-hand and cash to be generated from the continued operations of the Debtor's business, including the collection of its accounts receivable and the sale of inventory, both currently on hand and subsequently acquired. The Debtor believes that the cash may constitute "Cash Collateral" as that term is defined in the Bankruptcy Code.  *See* 11 U.S.C. §363(a).

15.    Through this Motion, and in an abundance of caution, the Debtor seeks to utilize cash collateral to cover the Debtor's essential expenses set forth in the Budget (attached as Exhibit 1 to the Interim Order, the "*Budget*"), and to ensure successful operations to allow the Debtor to promptly file a plan of reorganization. Those expenses include payment of wages, taxes, insurance and other ordinary course expenses that are needed for the continuation of the Debtor's business.

16.    Subject to entry of the Interim Order and the Final Order in forms acceptable in all respects to the Lender, the Lender consents to the Debtor's use of the cash collateral.

SLATKIN & REYNOLDS, P.A.
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880

17.     Unless authorized to use the cash received in the ordinary course of business, the Debtor will be unable to remain in business.

### Request for Preliminary Hearing to Consider Granting
### Interim Order Authorizing Debtor to Use Cash Collateral

18.     Pursuant to Bankr.R. 4001(b)(2), a final hearing on a motion to use cash collateral may not be commenced earlier than 14 days after service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed.R.Bankr.P. 4001(b)(2) and (c)(2).

19.     As stated above, it is essential to the continued operation of the Debtor's business that it be authorized by the Court to use cash collateral as set forth in the Interim Order pending the final hearing on the Motion. Unless this Motion is approved on an interim basis, the Debtor will be unable to pay its employees, suppliers and, otherwise, be unable to meet customer obligations, which would have a devastating effect on the Debtor's operations and revenues. Thus, funds are urgently needed to meet all of the Debtor's working capital and other liquidity needs. In the absence of immediate relief, the Debtor's attempt to continue its business in the ordinary course will be immediately and irreparably jeopardized.

20.     Such interim relief is essential to enable the Debtor to fulfill its ongoing obligations, as specifically detailed in the Budget. The continued payment of payroll and other operating expenses, as specified in the Budget, are the very minimum necessary for the Debtor to continue as a going concern for the benefit of all of its creditors' constituencies, including the Lender. Moreover, if the Debtor is to continue in operation, the Debtor must be able to obtain new inventory, for which the Debtor requires the use of the Lender's cash collateral. Accordingly, the Debtor respectfully requests the approval of this Motion, pending a final hearing, on an emergency

interim basis on the terms and subject to the conditions set forth in the Interim Order and Budget, or on such other terms as the Court may deem appropriate.

**Basis for Relief**

21.     Bankruptcy Code Section 363(c)(2), which governs the postpetition use of cash collateral by a debtor in possession, provides as follows:

> (2) the trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless — (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2)(A), (B).

22.     The Debtor seeks authorization to use cash collateral pursuant to 11 U.S.C. § 363(c)(2)(B). The cash collateral proposed to be used by the Debtor may include cash-on-hand and cash to be generated from the continued operations of the Debtor's business, including the collection of its accounts receivable and the sale of inventory.

23.     Section 361 of the Bankruptcy Code delineates the forms of adequate protection that may be provided, which include periodic cash payments, additional liens, replacement liens and other forms of relief. 11 U.S.C. § 361(1)-(3). What constitutes adequate protection must be decided on a case-by-case basis. *See MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F. 2d 1393, 1396-1397 (10th Cir. 1987); *Martin v. U.S. (In re Martin)*, 761 F. 2d 472, 474 (8th Cir. 1985); *In re Shaw Indus., Inc.*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003).

24.     The focus of the adequate protection requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Swedeland Dev. Group, Inc.*, 16 F. 3d 552, 564 (3rd Cir. 1994) ("[T]he whole purpose of adequate protection for a creditor is to insure that the creditor receives the value of which he bargained prebankruptcy") (internal citations omitted); *See also In re Carbone Companies, Inc.*,

395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("[T]he test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral"). It is well established that a bankruptcy court may grant the use of cash collateral in order to preserve or enhance a debtor's ability to remain a going concern. *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F. 2d 1017, 1019 (11th Cir. 1984). In addition, the grant of a replacement lien provides ample adequate protection of a secured creditor's interest in cash collateral. *O'Connor*, 808 F. 2d at 1397.

25.    As adequate protection for the use of the Cash Collateral, the Debtor shall, with the Court's permission, grant the Lender, *nunc pro tunc* to the Petition Date, the following (the "*Adequate Protection*"):

    a.    <u>Adequate Protection Liens</u>.  Subject to the Carve-Out (as defined herein) in all respects and the terms of the Interim Order, pursuant to sections 361, 363(e) and 364 of the Bankruptcy Code, and in consideration of the stipulations and consents set forth therein, as adequate protection for any postpetition diminution in value of the Lender's interests in the Prepetition Collateral (including the Cash Collateral) (any "*Diminution in Value*"), the Lender will be granted additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens (the "*Adequate Protection Liens*"), without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all property, whether now owned or hereafter acquired or existing and wherever located, of the Debtor and the Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind or nature whatsoever, real or personal, tangible or

intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), other equity or ownership interests, including equity interests in any subsidiaries and nonwholly-owned subsidiaries, money, investment property, and causes of action (including causes of action arising under section 549 of the Bankruptcy Code), and solely subject to entry of the Final Order, any causes of action (except as provided above) under sections 502(d), 544, 545, 547, 548, 550, 551, 553 or 724(a) of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code (collectively, the "*Avoidance Actions*") and proceeds thereof or property or cash recovered pursuant to Avoidance Actions, and all products, proceeds and supporting obligations of the foregoing, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located (collectively, the "*Postpetition Collateral*"), having the priority set forth in Paragraph 25(b) below. For the avoidance of doubt, the Adequate Protection Liens shall not include a lien on the Avoidance Actions until entry of the Final Order.

b.  <u>Priority of the Adequate Protection Liens</u>.  Subject to the terms of the Interim Order, the Adequate Protection Liens shall be junior only to the (A) Carve-Out,

(B) the Prepetition Liens, and (C) other unavoidable liens, if any, existing as of the Petition Date that are senior in priority to the Prepetition Liens. The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Postpetition Collateral (including any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code). Subject to the Carve-Out in all respects and the terms of the Interim Order, the Adequate Protection Liens shall be enforceable against and binding upon the Debtor, its estate, any subsequently appointed trustee under either Chapter 7 or 11 and any successors thereto.

c.  Superpriority Claim.  Subject to the Carve-Out in all respects and the terms of the Interim Order, as further adequate protection, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, the Lender will be granted an allowed administrative expense claim in the Case ahead of and senior to any and all other administrative expense claims in such Cases to the extent of any postpetition Diminution in Value (the "*Superpriority Claim*").

d.  Priority of the Superpriority Claim.  Subject to the Carve-Out in all respects, the Superpriority Claim will not be junior to any claims.

e.  Monthly Adequate Protection Payment.  The Debtor shall pay a monthly adequate protection payment of $10,000.00 (the "*Adequate Protection Payment*") to the Lender on or before the 20th of each month (or the first business day thereafter if the 20th falls on a Saturday, Sunday or Holiday).  The first Adequate Protection Payment shall be due on or before May 20, 2017.

f.  Reporting Requirement.  In addition to, and without limiting, whatever rights to access the Lender has under the Prepetition Loan Documents, upon reasonable

**SLATKIN & REYNOLDS, P.A.**
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880

notice, at reasonable times during normal business hours, the Debtor shall permit representatives, agents, and employees of the Lender to: (i) have access to and inspect the Debtor's assets; (ii) examine the Debtor's books and records, and (iii) to discuss the Debtor's affairs, finances, and condition with the Debtor's officers and financial advisors.

26.     The Debtor requests that the Adequate Protection Liens, the Adequate Protection Payment and the Superpriority Claim be at all times subject and junior to the following (the "*Carve-Out*"): (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code (and, with respect to the U.S. Trustee, in such amount as is agreed to by the U.S. Trustee or determined by the Court) plus interest at the statutory rate; and (ii) all accrued but unpaid costs, fees, and expenses incurred by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code to the extent allowed at any time whether allowed by interim order, procedural order, or otherwise in an aggregate amount not to exceed $90,000.00; provided, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement, or compensation described in preceding clause (ii).

27.     Pursuant to the Interim Order, the Debtor's authorization, and the Lender's consent, to use Cash Collateral shall terminate on the earliest to occur of: (i) the first business day that is 30 days after the Petition Date (unless such period is extended by the Lender in the Lender's sole discretion) if the Final Order has not been entered by the Court on or before such date; (ii) the entry of an order of this Court terminating such right; (iii) the dismissal of the Case or the conversion of the Case to a case under chapter 7 of the Bankruptcy Code; (iv) the appointment in the Case of a trustee or an examiner with expanded powers; and (v) the expiration of the Remedies

Notice Period following the delivery of a Termination Declaration (as defined in the Interim Order) by the Lender.

28.    Subject in all respects to the entry of the Final Order, the Debtor proposes that (i) the Lender shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b) and the "equities of the case" exception shall not apply; (ii) the Debtor shall not assert a claim under Bankruptcy Code section 506(c) for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Lender upon the Prepetition Collateral; and (iii) the collateral subject to the Adequate Protection Liens shall include the Avoidance Actions and proceeds thereof.

29.    The Debtor submits that the Adequate Protection, and the fact that the use of cash collateral will enable the Debtor to preserve value by continuing to operate in the ordinary course of business should adequately protect the Lender from any diminution in the value of any interests in collateral.

30.    Notice of this Motion was served in compliance with Fed.R.Bankr.P. 4001(b), upon the Lender, the prepetition counsel for the Lender, the Office of the United States Trustee, the Internal Revenue Service, and the persons and/or entities identified in the list of 20 largest unsecured creditors of the Debtor, as no unsecured creditors' committee has been appointed.

31.    A proposed order authorizing the Debtor's interim use of cash collateral pending final hearing is attached hereto as Exhibit "A".

WHEREFORE, for the reasons stated herein, the Debtor respectfully requests the Court grant this Motion, enter an order authorizing the use of cash collateral on an interim basis as set forth herein and in the Interim Order, set an emergency interim hearing and final hearing to authorize the Debtor's use of cash collateral, as well as any further relief the Court deems proper under the circumstances.

**SLATKIN & REYNOLDS, P.A.**
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 Telephone 954.745.5880

Dated this 26th day of April, 2017.

**SLATKIN & REYNOLDS, P.A.**
Proposed Attorneys for Debtor
One East Broward Boulevard, Suite 609
Fort Lauderdale, Florida 33301
Telephone 954.745.5880
Facsimile 954.745.5890
rreynolds@slatkinreynolds.com

By: /s/ Robert F. Reynolds
    ROBERT F. REYNOLDS
    Fla. Bar No. 174823

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing has been furnished via the Court's CM/ECF electronic noticing system to Office of the US Trustee, USTPRegion21.MM.ECF@usdoj.gov; Eric N. Assouline, Esq., ena@assoulineberlowe.com, ah@assoulineberlowe.com and all other parties entitled to receive notice via the Court's CM/ECF noticing system and via email to John B. Agnetti, Esq., john@hlalaw.com; Mark A. Goldstein, Esq., markgoldsteinattorney@gmail.com; Michael Friedman, Esq., friedman@chapman.com and Aaron M. Krieger, Esq., akrieger@chapman.com on this 26th day of April, 2017.

/s/ Robert F. Reynolds
ROBERT F. REYNOLDS

## Exhibit A

**Proposed Interim Order**

**\*\*\*[PROPOSED]\*\*\***

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

**NICE CAR, INC.,**

    Debtor.

**CASE NO.**
**CHAPTER 11**

<u>**INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL**</u>

    This matter came on for hearing on April \_\_\_, 2017 at \_\_\_ a.m./p.m. (the "*Interim Hearing*") upon the *Debtor's Emergency Motion For Entry Of Interim And Final Orders Authorizing Use Of Cash Collateral* (the "*Motion*") requesting this Court to enter an interim order (this "*Interim Order*"), and a final order (the "*Final Order*"), pursuant to sections 105, 361, 362, 363, 503, 507 and 552 of chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*"), Rules 2002, 4001, 6004 and 9013 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), Rules 4001-2, 9013-F and G, and 9075-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida (the "*Local Rules*"), and this Court's *Guidelines for Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing* (the "*Guidelines*"), (i) authorizing the Debtor to use cash collateral, (ii)

granting adequate protection in connection therewith, and (iii) scheduling an emergency interim hearing and a final hearing (the "*Final Hearing*") on the Motion.

The Court, having considered the Motion, the *Declaration of Steven Kerzer in Support of First Day Motions* [Docket No. __] (the "*First Day Declaration*") and first day motions and applications filed substantially contemporaneously with the Motion, and the evidence submitted, adduced or proffered at the Interim Hearing, the notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001 and 9013, and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court, and it appearing to the Court that granting the interim relief and entering this Interim Order is necessary to avoid immediate and irreparable harm to the Debtor, its creditors and its estate pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate and its creditors, and equity holders, and is essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

A.    Petition Date.    On April 24, 2017 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "*Court*"). The Debtor is continuing in the management and operation of its business and properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.    Jurisdiction and Venue.    This Court has jurisdiction over the Debtor's chapter 11 case (this "*Case*") pursuant to 28 U.S.C. §§ 157 and 1334 and over the persons and property

affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue of the Debtor's Case is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

C.  <u>No Committee</u>.  No official committee of unsecured creditors has been appointed in this Case.

D.  <u>Notice</u>.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtor, whether by facsimile, e-mail, overnight courier or hand delivery, to certain parties in interest, including: (i) the Lender, (ii) the prepetition counsel for the Lender, (iii) the Office of the United States Trustee, (iv) the Internal Revenue Service, (v)  the persons and/or entities identified in the list of 20 largest unsecured creditors of the Debtor, and (vi) any parties required to be served under any applicable Bankruptcy Rule or Local Rules. The Debtor has made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required.

E.  <u>Debtor's Acknowledgments and Agreements</u>.  Without prejudice to the rights of parties in interest as set forth in paragraph 16 herein, the Debtor (on behalf of and for itself and its estates) admits, stipulates, acknowledges and agrees that (collectively, paragraphs E(i) through E(vii) below are referred to herein as the "*Debtor's Stipulations*").

      i.  The Debtor is indebted to Stirling Financial LLC (the "*Lender*") in the sum of $20,978,653.00 evidenced by (i) that certain Consolidated Note dated as of October 1, 2014 executed by Debtor in favor of Lender in the original principal amount of $21,986,000.00 (the "*Consolidated Note*"), which Consolidated Note consolidated the following two notes previously executed by Debtor in favor of Lender: (A) Promissory Note dated January 2, 2004, in the original principal amount of $5,000,000.00 and (B) Promissory Note dated

August 8, 2007 in the original principal amount of $12,000,000.00 (the "*Prior Notes*" and together with the Consolidated Note, the "*Notes*"); (ii) that certain Agreement dated as of October 1, 2014 by and between Debtor and Lender; and (iii) that certain Consolidation, Modification, Ratification and Assumption Agreement dated as of October 1, 2014 by and between Debtor and Lender (all obligations evidenced by the foregoing and all other prepetition obligations owing from Debtor to Lender, collectively, the "*Prepetition Obligations*").

ii.   The Prepetition Obligations are secured by a Security Agreement, dated January 2, 2004 (as amended, the "*Security Agreement*"), pursuant to which the Debtor granted to the Lender a security interest in the following collateral (all collateral pledged under such Security Agreement, the "*Security Agreement Collateral*"): intangibles and all proceeds thereof, including but not limited to all accounts, chattel paper, documents, instruments, promissory notes and tangibles, including inventory (unless specifically excluded).

iii.   As further security for the Prepetition Obligations, the Debtor entered into two Assignment of Purchase Contracts dated as of October 1, 2014 and March 24, 2009 (the "*Assignment Agreements*" and together with the Notes, the Security Agreement, the Consolidation Agreement and any and all other related agreements and documents, including filed financing statements, evidencing any indebtedness by the Debtor to the Lender, the "*Prepetition Loan Documents*"), pursuant to which Assignment Agreements the Debtor collaterally assigned to the Lender all of its right, title and interest in certain

Purchase Contracts (as defined in the Assignment Agreements) (together with the Security Agreement Collateral, the "*Prepetition Collateral*").

iv.    The Lender has properly perfected its security interests in and on the Prepetition Collateral (the "*Prepetition Liens*") by taking possession of, or obtaining control over, certain assets, and/or by filing UCC-1 financing statements, mortgages, deeds of trust, or other required documents against the Debtor and such Prepetition Collateral in the proper state or county offices for the perfection of such security interests and liens.

v.    Subject to the provisions of paragraph 16 of this Interim Order, the Debtor (for itself and its estate) acknowledges and agrees that: (a) as of the Petition Date, the Prepetition Liens were valid, binding, enforceable, nonavoidable and properly perfected; (b) the Prepetition Liens have priority over any and all other liens on the Prepetition Collateral, (c) the Prepetition Obligations constitute legal, valid, binding, and nonavoidable obligations of the Debtor, enforceable in accordance with the terms of the applicable prepetition documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code and as set forth in this Interim Order); (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtor expressly, forever and irrevocably waives, discharges, releases and

acquits the Lender and each of its respective former, current and future affiliates, agents, attorneys, advisors, professionals, members, managers, officers, directors and employees respective officers, directors, employees, managers, owners, shareholders, members, partners, agents, representatives, attorneys, advisors, consultants, accountants and other professionals, affiliates, predecessors and successors in interest (collectively, the "*Lender Parties*") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, defenses, offsets, objections, counterclaims, causes of actions, choses of action, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, including, without limitation, all legal and equitable theories of recovery arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the Prepetition Loan Documents and/or the transactions contemplated hereunder or thereunder, including, without limitation, (1) any so-called "lender liability" or equitable subordination claims or defenses and (2) any and all claims and causes of action with respect to the Prepetition Liens or Prepetition Obligations, including, without limitation, to the validity, priority, perfection or avoidability of the liens or claims of the Lender; and (f) the Debtor expressly, forever and irrevocably waives, discharges, and releases rights that

it may have to challenge any of the Prepetition Liens or the Prepetition Obligations.

vi. The Debtor represents that all of the Debtor's cash and cash equivalents, including the cash in its deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitute the "cash collateral" of the Lender (as such term is defined in section 363(a) of the Bankruptcy Code) (the "*Cash Collateral*"), and is Prepetition Collateral of the Lender.

vii. Without the prior express written approval of the Lender, the Debtor shall not (i) file with the Court any pleading or request to (A) limit, alter, modify, or terminate any provision of this Interim Order, or any protection granted to the Lender hereunder, or (B) extinguish, subordinate or diminish any security interest, lien or claim of the Lender, or (ii) seek, consent to, or join in the approval of any matter or any plan of reorganization which purports to do any of the things prohibited by this Interim Order.

F.    <u>Use of Cash Collateral</u>.  The Lender is entitled to receive adequate protection to the extent of any diminution in value of its interests in the Prepetition Collateral (including the Cash Collateral) resulting from the use of Cash Collateral, the authorized use, sale or lease of Prepetition Collateral, the subordination of the Prepetition Liens to the Carve Out (as described herein), and the imposition of the automatic stay (collectively, the "*Diminution in Value*") pursuant to sections 361, 362, and 363 of the Bankruptcy Code. The Debtor has requested that the Lender consent to the Debtor's use of the Cash Collateral pursuant to the terms and conditions of this Interim Order during the Interim Period (as defined herein). Subject to the entry of and continued effectiveness of this Interim Order, the Lender has consented to the

Debtor's use of the Cash Collateral during the Interim Period strictly on the terms and conditions set forth herein.

**NOW, THEREFORE**, on the Motion of the Debtor and the record before this Court with respect to the Motion, and with the consent of the Debtor and the Lender to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.      The Motion is GRANTED in accordance with and limited to the terms and conditions set forth in this Interim Order.

2.      All objections to the Motion as it relates to the interim relief sought therein and to the entry of this Interim Order have been resolved by the provisions hereof or are overruled.

3.      The Debtor's authorization, and the Lender's consent, to use Cash Collateral shall terminate on the earliest to occur of (the "*Termination Date*"): (i) the first business day that is 30 days after the Petition Date (unless such period is extended by the Lender in the Lender's sole discretion) if the Final Order has not been entered by this Court on or before such date; (ii) the entry of an order of this Court terminating such right; (iii) the dismissal of the Case or the conversion of the Case to a case under chapter 7 of the Bankruptcy Code; (iv) the appointment in the Case of a trustee or an examiner with expanded powers; or (v) the expiration of the Remedies Notice Period following the delivery of a Termination Declaration (each as defined herein) by the Lender, according to the procedures set forth in Paragraph 12 below (the period during which the Debtor is authorized to use Cash Collateral pursuant to this Interim Order being referred to as the "*Interim Period*").

4.      The Debtor, the Lender, and their respective advisors and employees have acted in good faith in negotiating, consenting, and agreeing to the Debtor's use of the Cash Collateral as contemplated and provided by this Interim Order. The negotiation of the terms and provisions

of this Interim Order has been conducted at arms' length, and such terms and provisions are fair and reasonable under the circumstances and reflect the Debtor's exercise of reasonable business judgment consistent with the Debtor's fiduciary duties.

5.      Nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Lender or any of its advisors or employees, any liability for any claims arising from the prepetition or postpetition activities of the Debtor in the operation of its business, or in connection with its restructuring efforts.

6.      This Interim Order is without prejudice to the rights of the Lender to seek a modification of this Interim Order, including a request for additional adequate protection or the termination of the Debtor's right to use Cash Collateral, after notice and hearing, including a hearing noticed on an emergency basis. The Lender has expressly reserved, and this Interim Order is without prejudice to, any and all rights and remedies of the Lender, including as to the appropriateness of any adequate protection that may be proposed in connection with any authorization to use Cash Collateral after the Interim Period.

7.      The Cash Collateral shall be used by the Debtor in a manner consistent with the terms and conditions of this Interim Order and in accordance with the Budget, attached hereto as Exhibit 1 (the "*Budget*"), limited pursuant to this Interim Order to the Interim Period, subject to the Permitted Budget Variance (as defined herein).  The Budget shall include a four (4) month estimate of the costs and expenses (including all payments authorized hereunder) of administering the Case (including payments under the Carve-Out as provided herein). Commencing on  May 5th, 2017, and continuing on the fifth day of every month thereafter (or the next business day if such day is not a business day), the Debtor shall be required to deliver to the Lender: (i), an updated Budget providing an estimate of the costs and expenses of administering the Case for the following four (4) month period (provided that the Debtor shall not be permitted

to modify any estimates provided in the prior month's Budget without the express written consent of the lender, but may only add to the Budget an estimate for costs and expenses to be incurred in the months not covered by any already-delivered Budget), and (ii) a monthly variance report comparing the actual receipts and disbursements of the Debtor with the receipts and disbursements estimated in the Budget.

8.      The Debtor may use the Cash Collateral during the Interim Period solely to pay the ordinary, necessary and reasonable expenses of operating its business exclusively in accordance with and subject to the Budget. The Debtor's actual disbursements for any given month during the Interim Period shall not exceed the sum of (x) 120% of the disbursements projected for such month in the Budget, plus (y) (except for the first month) any unused portion of the disbursements projected for the prior month in the Budget (the "*Permitted Budget Variance*"). The Budget and any modification to, or extension, amendment or update of the Budget, shall be in a form and substance acceptable to the Lender in its sole discretion.

9.      On account of the Debtor's use of the Cash Collateral during the Interim Period, the Lender is granted the following adequate protection:

        a.      <u>Adequate Protection Liens</u>.  Subject to the Carve-Out (as defined herein) in all respects and the terms of this Interim Order, pursuant to sections 361, 363(e) and 364 of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as adequate protection for any postpetition diminution in value of the Lender's interests in the Prepetition Collateral (including the Cash Collateral) (any "*Diminution in Value*"), the Lender is hereby granted additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens (the "*Adequate Protection Liens*"), without the necessity of the execution by the Debtor (or recordation or

other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all property, whether now owned or hereafter acquired or existing and wherever located, of the Debtor and the Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), other equity or ownership interests, including equity interests in any subsidiaries and nonwholly-owned subsidiaries, money, investment property, and causes of action (including causes of action arising under section 549 of the Bankruptcy Code), and solely subject to entry of the Final Order, any causes of action (except as provided above) under sections 502(d), 544, 545, 547, 548, 550, 551, 553 or 724(a) of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code (collectively, the "*Avoidance Actions*") and proceeds thereof or property or cash recovered pursuant to Avoidance Actions, and all products, proceeds and supporting obligations of the foregoing, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located (collectively, the

"*Postpetition Collateral*"), having the priority set forth in Paragraph 9(b) below. For the avoidance of doubt, the Adequate Protection Liens shall not include a lien on the Avoidance Actions until entry of the Final Order.

b.   Priority of the Adequate Protection Liens.   Subject to the terms of this Interim Order, the Adequate Protection Liens shall be junior only to the (A) Carve-Out, (B) the Prepetition Liens, and (C) other unavoidable liens, if any, existing as of the Petition Date that are senior in priority to the Prepetition Liens. The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Postpetition Collateral (including any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code). Subject to the Carve-Out in all respects and the terms of this Interim Order, the Adequate Protection Liens shall be enforceable against and binding upon the Debtor, its estate, any subsequently appointed trustee under either Chapter 7 or 11 and any successors thereto.

c.   Superpriority Claim.   Subject to the Carve-Out in all respects and the terms of this Interim Order, as further adequate protection, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, the Lender is hereby granted an allowed administrative expense claim in the Case ahead of and senior to any and all other administrative expense claims in such Cases to the extent of any postpetition Diminution in Value (the "*Superpriority Claim*").

d.   Priority of the Superpriority Claim.   Subject to the Carve-Out in all respects, the Superpriority Claim will not be junior to any claims.

e.   Monthly Adequate Protection Payment.   The Debtor shall pay a monthly adequate protection payment of $10,000.00 (the "*Adequate Protection Payment*") to the

Lender on or before the 20th of each month (or the first business day thereafter if the 20th falls on a Saturday, Sunday or Holiday).  The first Adequate Protection Payment shall be due on or before May 20, 2017.

f.  <u>Reporting Requirement</u>.  In addition to, and without limiting, whatever rights to access the Lender has under the Prepetition Loan Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtor shall permit representatives, agents, and employees of the Lender to: (i) have access to and inspect the Debtor's assets; (ii) examine the Debtor's books and records, and (iii) to discuss the Debtor's affairs, finances, and condition with the Debtor's officers and financial advisors.

10.    The Adequate Protection Liens, the Superpriority Claim and the Adequate Protection Payment, to the extent granted hereunder to and for the benefit of the Lender, shall be subject and subordinate to the following expenses (collectively, the "*Carve Out*"): (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code (and, with respect to the U.S. Trustee, in such amount as is agreed to by the U.S. Trustee or determined by the Court) plus interest at the statutory rate; and (ii) all accrued but unpaid costs, fees, and expenses incurred by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code to the extent allowed at any time whether allowed by interim order, procedural order, or otherwise in an aggregate amount not to exceed $90,000.00; provided, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement, or compensation described in preceding clause (ii).

11.    The following events shall each constitute an event of default hereunder, (collectively, the "*Events of Default*"):

a.  the violation of or failure by the Debtor to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order (including the Budget);

b.  the obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest, mortgage or other lien on all or any portion of the Postpetition Collateral which is equal or senior to any security interest, mortgage or other lien of the Lender, or (ii) entitled to priority administrative status which is equal or senior to that granted to the Lender herein;

c.  the institution of a Challenge (as defined below) after a party in interest has been granted standing by order of the Court;

d.  any lien or security interest purported to be created under the Prepetition Loan Documents shall cease to be, or shall be asserted by the Debtor not to be, a valid and perfected lien on or security interest in any Prepetition Collateral, with the priority required by the Prepetition Loan Documents or herein;

e.  the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Postpetition Collateral, or (ii) with respect to any lien of or the granting of any lien on any Postpetition Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtor;

f.  the reversal, vacatur, or modification (without the express prior written consent of the Lender, in its sole discretion) of this Interim Order; dismissal of the Case or

conversion of the Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with enlarged powers or other responsible person;

g.    the sale of any portion of the Debtor's assets outside the ordinary course of business without the prior written consent of the Lender, in its sole discretion;

h.    the Debtor's failure to obtain entry of the Final Order by May 26, 2017;

i.    the Debtor's failure to file a plan of reorganization in form and substance satisfactory to the Lender in all respects (the "*Plan*") by May 26, 2017;

j.    the Debtor's failure to obtain confirmation of the Plan by July 31, 2017; or

k.    the granting of any motion providing for reconsideration, stay, or vacatur of this Interim Order; or (1) the Debtor shall assert in any pleading filed in any court that any material provision of this Interim Order is not valid and binding for any reason, or (2) any material provision of this Interim Order shall, for any reason, cease to be valid and binding without the prior written consent of the Lender.

12.    Immediately upon the occurrence and during the continuation of an Event of Default, the Lender may declare a termination, reduction or restriction of the ability of the Debtor to use any Cash Collateral (any such declaration shall be referred to herein as a "*Termination Declaration*"). The Termination Declaration shall be given by e-mail or facsimile (or other electronic means) contemporaneously to counsel to the Debtor, counsel to any Statutory Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "*Termination Declaration Date*"). On the Termination Declaration Date, the Debtor's right to use Cash Collateral shall automatically cease, except as provided herein. Within seven (7) business days after the Termination Declaration Date (the "*Remedies Notice Period*"), the Debtor and/or the Statutory Committee shall be entitled to seek an emergency hearing with the Court seeking an emergency determination of whether an Event

of Default has occurred and/or any other appropriate relief related to the Debtor's continued use of Cash Collateral on a non-consensual basis, with the rights and objections of all parties reserved with respect thereto. Unless the Court determines otherwise during the Remedies Notice Period (which shall be extended, if necessary, to accommodate the Court's calendar for an emergency hearing), the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice to or order of the Court, and the Debtor shall no longer have the right to use Cash Collateral and the Lender shall be permitted to exercise any and all remedies set forth herein or in the Prepetition Loan Documents, as applicable, and as otherwise available at law against the Postpetition Collateral, without further order of or notice, application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the Postpetition Collateral or any other rights and remedies granted to the Lender with respect thereto pursuant to the Prepetition Loan Documents or this Interim Order, as applicable. In addition, the Lender shall have the right to file an emergency motion with the Court during the Remedies Notice Period seeking, among other things, relief from the automatic stay otherwise applicable to the Lender so as to be able to exercise its rights and remedies at law or in equity to satisfy the Prepetition Obligations, the Superpriority Claim, the Adequate Protection Liens, and the Prepetition Loan Documents and any other obligation under this Interim Order.

13.     The Debtor shall be obligated to pay in cash, on a monthly basis during the Case, the reasonable and documented fees, expenses and disbursements of the Lender (including attorneys' fees) in connection with any actions taken to enforce the terms of this Interim Order or to seek remedies hereunder, provided that any such outstanding and unpaid fees and expenses shall be entitled to administrative expense priority. The payment of the fees, expenses

and disbursements set forth in this paragraph 13 shall be made within five (5) business days after the receipt by the Debtor of invoices therefor.

14.     Notwithstanding anything to the contrary set forth in this Interim Order, the Cash Collateral may not be used: (i) to investigate (except as expressly provided herein), initiate, prosecute, join, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, or other litigation of any type (A) against the Lender or seeking relief that would impair the rights and remedies of the Lender under the Prepetition Loan Documents or this Interim Order, or otherwise, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor or any Creditors' Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration, or similar relief that would impair the ability of the Lender to recover on the Prepetition Liens or Prepetition Obligations or seeking affirmative relief against the Lender related to the Prepetition Liens or Prepetition Obligations; (B) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Prepetition Obligations or the Lender's liens or security interests in the Prepetition Collateral; or (C) for monetary, injunctive, or other affirmative relief against the Lender, or its liens on or security interests in the Prepetition Collateral that would impair the ability of the Lender to assert or enforce any lien, claim, right, or security interest or to realize or recover on the Prepetition Liens or Prepetition Obligations; (ii) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition Liens) held by or on behalf of the Lender related to the Prepetition Obligations; (iii) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any

Avoidance Actions against the Lender related to the Prepetition Obligations or the Prepetition Liens; or (iv) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Liens or any other rights or interests of the Lender related to the Prepetition Obligations or the Prepetition Liens; provided, that no more than $15,000.00 of the proceeds of the Prepetition Collateral may be used by the Creditors' Committee, if appointed, solely to investigate the foregoing matters within the Challenge Period (as defined herein).

15.     Subject to Paragraph 16 hereof, each stipulation, admission, and agreement contained in this Interim Order including, without limitation, the Debtor's Stipulations, shall be binding upon the Debtor, its estate and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor) under all circumstances and for all purposes, and the Debtor is deemed to have irrevocably waived and relinquished all Challenges (as defined herein) as of the Petition Date.

16.     Nothing in this Interim Order shall prejudice the rights of a Statutory Committee, if granted standing by the Court, and, solely if no Statutory Committee is appointed, any other party in interest granted standing by the Court (other than the Debtor and/or its successors) to seek, solely in accordance with the provisions of this paragraph 16, to assert claims against any the Lender or the Lender Parties on behalf of the Debtor, its estates, or its creditors, or to otherwise object to or to challenge the findings, Debtor's Stipulations, or any other stipulations or findings herein, including, but not limited to those in relation to: (a) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of Lender; (b) the validity, allowability, priority, fully secured status or amount of the Prepetition Obligations under the Prepetition Loan Documents; (c) any liability of the Lender with respect to anything arising from the Prepetition Loan Documents or the Debtor; and (d) any claims against the Lender and Lender

Parties under Chapter 5 of the Bankruptcy Code. A party in interest, including any Statutory Committee (if appointed), that has been granted standing must commence, as appropriate, an adversary proceeding raising such claim, objection or challenge, including, without limitation, any claim or cause of action against the Lender (each, a "*Challenge*") within the earlier of (i) thirty (30) calendar days following the formation of a Statutory Committee (if appointed), and (ii) if no Statutory Committee is appointed, forty-five (45) days from the Petition Date (together, the "*Challenge Period*"). The Challenge Period may only be extended for cause shown on motion and hearing brought prior to its expiration, or by written consent of the Lender, in its sole discretion. Only those parties in interest (including, without limitation, the Statutory Committee, if appointed), that have properly initiated a Challenge challenging the Prepetition Obligations under the Prepetition Loan Documents, the Prepetition Liens, or any liability of the Prepetition Lender prior to the expiration of the Challenge Period shall be permitted to participate in the prosecution of such Challenge. As to (i) any parties in interest, including the Statutory Committee (if appointed), who fail to file a Challenge prior to the expiration of the Challenge Period, or if any such Challenge is filed and overruled or dismissed and (ii) any and all matters that are not expressly the subject of a timely Challenge: (A) any and all such Challenges by any party (including, without limitation, any Statutory Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in this Case, and any chapter 7 trustee and/or examiner or other estate representative appointed in any successor Case), shall be deemed to be forever waived, released and barred, (B) all unchallenged matters, Debtor's Stipulations, findings, waivers, releases, waivers, releases, affirmations and other stipulations, including as to the validity, perfection, priority, allowability, enforceability or nonavoidability as to the Prepetition Lender's claims, liens, and interests, shall be of full force and effect and forever binding upon the Debtor, the Debtor's bankruptcy estate and all creditors, interest holders, and

other parties in interest in this Case and any successor Case, and (C) any and all claims or causes of action against the Lender and the Lender Parties relating in any way to the Debtor shall be forever waived and released by the Debtor's estate, all creditors, interest holders and other parties in interest in this Case and any successor Case.

17.    The Lender has acted in good faith in connection with this Interim Order and its reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the use of Cash Collateral contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, stayed, amended or vacated by a subsequent order of this or any other Court, the is entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such modification, stay, amendment or vacatur shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacatur, any claim or lien granted to the Lender hereunder arising prior to the effective date of such modification, amendment or vacatur of any Adequate Protection Liens or granted to the Lender shall be governed in all respects by the original provisions of this Interim Order, and the Lender shall be entitled to all of the rights, remedies, privileges and benefits, including the Adequate Protection Liens granted herein, with respect to any such claim or lien. Since the consent to the use of Cash Collateral is made in reliance on this Interim Order, the Prepetition Obligations owed to the Lender prior to the effective date of any stay, modification or vacatur of this Interim Order cannot, as a result of any subsequent order in the Case or in any successor Case, be subordinated, lose their lien priority or super priority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the Lender under this Interim Order.

18.     The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the extent necessary to implement this Interim Order.

19.     The Lender may, but is not required to file proofs of claim in the Case or any successor Case. Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in the Case or any successor Case shall not apply to the Lender. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in the Case or successor Case to the contrary, the Lender is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim in the Case or any Successor Case.

20.     Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Lender hereunder is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Case. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Lender, that the adequate protection granted herein does in fact adequately protect the Lender against any diminution in value of its interests in the Prepetition Collateral (including the Cash Collateral).

21.     Subject to entry of the Final Order, the Lender shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b) and the "equities of the case" exception shall not apply.

22.     Subject to entry of the Final Order, the Debtor shall not assert a claim under Bankruptcy Code section 506(c) for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Lender upon the Prepetition Collateral.

23.     The Lender shall be entitled to apply the payments or proceeds of the Prepetition Collateral in accordance with the provisions of the Prepetition Loan Documents, and in no event shall any of the Secured Parties be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral.

24.     Pursuant to sections 105, 361, and 363 of the Bankruptcy Code, the Lender is hereby found to be an entity that has acted in "good faith" in connection with the negotiation and entry of this Interim Order, and the Lender is entitled to the protection provided to such entities under section 363(m) of the Bankruptcy Code.

25.     This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry hereof. To the extent that any findings of fact are determined to be conclusions of law, such findings of fact shall be adopted as such; and to the extent that any conclusions of law are determined to be findings of fact, such conclusions of law shall be adopted as such.

26.     Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

27.     The Court has and will retain jurisdiction to enforce this Interim Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Order.

28.     The Final Hearing to consider entry of the Final Order and final approval of the use of Cash Collateral, shall be held on _____ at _____, at the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division, 299 E. Broward Blvd., Courtroom 308, Ft. Lauderdale, Florida 33301 before the Honorable Raymond B. Ray, United States Bankruptcy Judge.

###

[Copies to Counsel for Debtor via CM/ECF]

## <u>Exhibit 1</u>

**Budget**

**Nice Car Inc**

**Cash Collateral Budget Projections**

| | May 2017 | June 2017 | July 2017 | August 2017 |
|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | |
| **Income** | | | | |
| **Sales** | | | | |
| **Total Income** | 636,000.00 | 636,000.00 | 636,000.00 | 636,000.00 |
| **Cost of Goods Sold** | | | | |
| **Buyers Commissions** | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 |
| **Cost Of Goods Sold** | | | | |
| **Dealer Payments** | 316,293.35 | 316,293.35 | 316,293.25 | 316,293.35 |
| **Dents and Bodywork** | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 |
| **Detailing** | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 |
| **Bird-Dogs ($50 to 150 each)** | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 |
| **Commissions - Inside sales people** | 16,000.00 | 16,000.00 | 16,000.00 | 16,000.00 |
| **Gas** | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| **General Car Repairs,Parts and Other** | 40,000.00 | 40,000.00 | 40,000.00 | 40,000.00 |
| **Pack Expense to Shelby** | 45,000.00 | 45,000.00 | 45,000.00 | 45,000.00 |
| **Repo Expenses** | 5,500.00 | 5,500.00 | 5,500.00 | 5,500.00 |
| **Tires, Alignments & Wheels** | 400.00 | 400.00 | 400.00 | 400.00 |
| **Towing** | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 |
| **Tracking units** | 400.00 | 400.00 | 400.00 | 400.00 |
| **Upholstery** | 800.00 | 800.00 | 800.00 | 800.00 |
| **Cost Of Goods Sold - Other** | 500.00 | 500.00 | 500.00 | 500.00 |
| **Total Cost Of Goods Sold** | 449,393.35 | 449,393.35 | 449,393.25 | 449,393.35 |
| **Inventory adjustment Account** | 0.00 | 0.00 | 0.00 | 0.00 |
| **Parts** | 0.00 | 0.00 | 0.00 | 0.00 |
| **Repo Certificates** | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 |
| **Total COGS** | 461,393.35 | 461,393.35 | 461,393.25 | 461,393.35 |
| **Gross Profit** | 174,606.65 | 174,606.65 | 174,606.75 | 174,606.65 |
| **Expense** | | | | |
| **Advertising and Promotion** | 9,000.00 | 9,000.00 | 9,000.00 | 9,000.00 |
| **background pre-employment chks** | 24.00 | 24.00 | 24.00 | 24.00 |
| **Bank Service Charges** | 600.00 | 600.00 | 600.00 | 600.00 |
| **Business Licenses and Permits** | 150.00 | 150.00 | 150.00 | 150.00 |
| **Charitable Donations** | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| **Computer and Internet Expenses** | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| **Stirling – Analytics and Other Costs** | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| **Credit Card Processing Fees** | 1,750.00 | 1,750.00 | 1,750.00 | 1,750.00 |
| **Credit Check** | 75.00 | 75.00 | 75.00 | 75.00 |
| **Employee Recruiting Expenses** | 50.00 | 50.00 | 50.00 | 50.00 |
| **Insurance Expense** | | | | |
| **Classics** | 100.00 | 100.00 | 100.00 | 100.00 |
| **Health** | 3,098.11 | 3,098.11 | 3,098.11 | 3,098.11 |
| **Liability insurance** | 2,200.00 | 2,200.00 | 2,200.00 | 2,200.00 |
| **Life Insurance** | 3,417.21 | 3,417.21 | 3,417.21 | 3,417.21 |

| | | | | |
|---|---|---|---|---|
| **Workmans Compensation** | 786.67 | 786.67 | 786.67 | 786.67 |
| **Total Insurance Expense** | 9,601.99 | 9,601.99 | 9,601.99 | 9,601.99 |
| **Interest Expense** | 0.00 | 0.00 | 0.00 | 0.00 |
| **Janitorial** | 300.00 | 300.00 | 300.00 | 300.00 |
| **Legal Fees** | 11,000.00 | 11,000.00 | 11,000.00 | 11,000.00 |
| **Meals and Entertainment** | 100.00 | 100.00 | 100.00 | 100.00 |
| **Office Supplies** | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 |
| **Payroll Expenses** | 67,000.00 | 83,750.00 | 67,000.00 | 67,000.00 |
| **Payroll Tax Expense** | 5,000.00 | 6,700.00 | 5,000.00 | 5,000.00 |
| **Police/Security** | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 |
| **Postage** | 200.00 | 200.00 | 200.00 | 200.00 |
| **Professional Fees** | 800.00 | 800.00 | 800.00 | 800.00 |
| **Rent Expense** | 10,033.98 | 10,033.98 | 10,033.98 | 10,033.98 |
| **Rent Expense - Mamish SK** | 3,180.00 | 3,180.00 | 3,180.00 | 3,180.00 |
| **Repairs and Maintenance** | 750.00 | 750.00 | 750.00 | 750.00 |
| **Security** | 250.00 | 250.00 | 250.00 | 250.00 |
| **Subscriptions** | 300.00 | 300.00 | 300.00 | 300.00 |
| **Telephone Expense** | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| **tolls** | 50.00 | 50.00 | 50.00 | 50.00 |
| **Uniforms** | 75.00 | 75.00 | 75.00 | 75.00 |
| **Utilities** | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 |
| **Vehicle Reports** | 1,588.00 | 1,588.00 | 1,588.00 | 1,588.00 |
| **Adequate Protection Payment** | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| **Total Expense** | 153,077.97 | 171,527.97 | 153,077.97 | 153,077.97 |
| | | | | |
| **Net Ordinary Income** | 21,528.68 | 3,078.68 | 21,528.78 | 21,528.68 |