UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>**NICE CAR, INC.,**<br><br>    Debtor. | **CASE NO.**<br>**CHAPTER 11** |

### DECLARATION OF STEVEN KERZER IN SUPPORT OF FIRST DAY MOTIONS

I hereby declare that the following is true to the best of my knowledge, information and belief:

1. My name is Steven Kerzer. I am the President Nice Car, Inc. ("Nice Car"). I am over the age of 18.

2. As President of Nice Car, I have detailed knowledge of, and experience with, the business and financial affairs of Nice Car and have been actively engaged in the Debtor's business as described herein.

3. To minimize any adverse effects on its business, Nice Car seeks emergency relief in certain applications and motions ("First Day Motions") to, among other things, (a) continue its operations while in Chapter 11 with as little disruption as possible; (b) reorganize Nice Car and restructure its financial obligations; (c) maintain the confidence and support of its customers and employees; and (d) establish procedures for the smooth administration of this bankruptcy proceeding. The relief requested in the First Day Motions is crucial to the success of Nice Car's reorganization efforts.

4. I submit this declaration (the "Declaration") in support of Nice Car's bankruptcy petition and First Day Motions. In addition to the personal knowledge I have acquired while

owning and working with Nice Car, I have general knowledge of Nice Car's books and records and I am familiar with Nice Car's financials and operational affairs.

5.      Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge, my review of Nice Car's books and records, relevant documents and other information prepared or collected by Nice Car's employees or advisors, or my opinion based upon my experience with Nice Car's operations and financial condition. In making the statements herein based upon my review of Nice Car's books and records, relevant documents and other information prepared or collected by Nice Car's employees, I have relied upon these employees to accurately record, prepare and collect any such documentation and other information.

6.      If I were called to testify as a witness in this matter, I could and would competently testify as to each of the facts set forth herein based upon my personal knowledge, review of documents and/or my personal opinion.

7.      Section I of this Declaration describes Nice Car's business and the developments that led to Nice Car's filing of the voluntary chapter 11 proceeding. Section II sets forth the relevant facts in support of the First Day Motions. Section III summarizes Nice Car's objective in this Chapter 11 case.

**I.   Background**

8.      On April 24, 2017, ("Petition Date"), Nice Car filed the instant Chapter 11 case.

9.      Nice Car intends to operate its business as a debtor in possession.

10.     Nice Car is a corporation that was initially created in the State of Florida in 1977. Nice Car's main office is located at 5813 Funston Street, Hollywood, Florida, which is located in Broward County.  Nice Car has operated out of essentially the same location since its

Case 17-15001-RBR    Doc 17    Filed 04/26/17    Page 3 of 15

Case No. 17-15001-RBR

incorporation. As the business grew, Nice Car leased other lots next to or close by the address above, but the operations have never gone beyond the general area.

11. Nice Car's principal business is the selling of used cars. The vast majority of Nice Car's clients are low income individuals and/or persons who have either no credit history and/or significant issues with their credit history, and cannot obtain conventional financing from a third party lender.

12. Nice Car currently has 15 employees, including myself. There are three salespeople, two porters/lot attendants, three managers other than myself and six clerical workers. The salespeople are paid on straight commission. We do not offer any benefits or profit sharing/retirement plans.

13. Nice Car's business falls into what is commonly called "buy here, pay here" car sales. Nice Car self-finances the individuals who buy cars from it if they do not have cash to pay for the car with a one-time payment.

14. Nice Car's revenue is thus largely dependent on the continued sales of cars, from which Nice Car receives down payments, as well as continued monthly payments that its customers make. As will be further set forth herein, Nice Car has established several methods for customers to make payments.

**A. Nice Car's Financing Structure**

15. Stirling Financial LLC ("Stirling") has a senior secured lien with respect to all of the Debtor's cash collateral. According to the loan documents memorializing the loan from Stirling, Stirling has a security interest in all of Nice Car's account receivables and Nice Car's inventory. The current amount due to Stirling as of the Petition Date is approximately $20,978,653.00. The Cash Collateral Motion contains a complete description of Stirling's loan documents and the dates the transactions took place.

3

16. Nice Car and Stirling have, prior to the filing of the case, substantially negotiated a resolution of the treatment of Stirling's claim in this case.

17. In addition to the financing from Stirling, Nice Car borrowed, on an unsecured basis, from the following persons: a) Dr. David Tepper, who is owed approximately $5 million; b) Anthony and Janet Ansaldi (the "Ansaldis"), who claimed in their recently filed lawsuit that they are owed approximately $1.3 million; c) Joel Coplowitz, who is owed approximately $305,000.00; d) Ben Karnefsky, who is owed approximately $125,000.00; e) Michelle Kanov, who is owed approximately $60,000.00; f) Phillip Baratz, who is owed approximately $50,000.00. Both Mr. Baratz and Mr. Coplowitz are also investors through Stirling; thus, they have direct loans with Nice Car and are involved indirectly through Stirling.

18. In addition to the foregoing, my father, Seymour Kerzer, is owed $76,661.00.

19. Nice Car is current with all of its vendors and trade creditors. This is generally because Nice Car's largest expense is the purchase of inventory, and the automobile auctions where Nice Car purchases its inventory require either immediate payment or payment within a day or two of the auction. Accordingly, Nice Car has stayed current because it had no choice if it wanted to continue to purchase new cars from the auction, which, as explained in more detail below, was absolutely necessary for Nice Car to continue in business.

**B. Events Leading to Chapter 11**

20. Nice Car's business has been relatively successful over the 40 years that Nice Car has been in business. However, beginning in approximately 2013, certain government regulations regarding the provision of financing to purchasers of vehicles who had credit issues or otherwise had low incomes were relaxed. Accordingly, the clientele that Nice Car served and targeted in advertising for purchases of vehicles had additional options to purchase vehicles, making the market more competitive, and driving business away from Nice Car. Accordingly,

from 2013 to 2015, Nice Car's number of car sales, and thus its gross income, declined significantly.

21. Nice Car's gross receipts in 2014 were $13,143.420.00. In 2015, this number declined to $9,782,091.00. In 2016, it further declined to $4,589,201.00.

22. In response to the decline in income, Nice Car took steps to shore up its finances. In 2014, Nice Car renegotiated its financing arrangements with Stirling. At that time, the balance owed to Stirling had increased to $21,986,000.00.

23. Unfortunately, the continued decline in sales left Nice Car with the inability to pay the amounts due to Stirling.

24. At the same time Nice Car originally borrowed from Stirling, Nice Car also borrowed money from the other sources named above.

25. At the time that Nice Car negotiated its modifications with Stirling, Nice Car also negotiated modifications with Tepper and the Ansaldis. Unfortunately, for the same reasons that Nice Car stopped making payments to Stirling, Nice Car could no longer make payments to either Dr. Tepper or the Ansaldis.

26. Both Dr. Tepper and the Ansaldis have filed lawsuits in the Broward County Circuit Court. The Ansaldis' lawsuit seeks to collect the money solely from Nice Car, while Tepper had included claims against me individually. In their lawsuit, the Ansaldis claim they are owed $1,319,571.64. Tepper claims that he is owed more than $5 million.

**II. First Day Motions**

27. Concurrently with the filing of this Chapter 11 case, Nice Car will be filing several First Day Motions. Nice Car requests a hearing on or before Friday, April 28, 2017, as Nice Car is scheduled to fund payroll on April 28.

### A. Debtor's Application for Employment of Professionals – Slatkin & Reynolds, P.A., Steven Silverman, CPA and Joseph Klapholz, P.A.

28. Nice Car has filed its Application for Approval of the Employment of Robert F. Reynolds & Slatkin and Reynolds, P.A. as Counsel for Debtor in Possession on an Interim and Final Basis (the "S&R Application"), Application for Approval of the Employment of Steven Silverman, CPA as Accountant for Debtor in Possession on an Interim and Final Basis (the "Silverman Application") and Application for Approval of the Employment of Joseph Klapholz and Joseph Klapholz, P.A. as Special Counsel for Debtor in Possession on an Interim and Final Basis.

29. As detailed in the S&R Application, Nice Car understands that S&R and its attorneys have extensive experience in Chapter 11 bankruptcy matters and are well qualified to serve as general bankruptcy counsel to Nice Car. Nice Car believes it is in its best interest and those of its creditors that S&R be retained to serve as bankruptcy counsel in this proceeding.

30. Because I am advised that Nice Car is unable to represent itself and must engage a licensed attorney to appear on its behalf and Nice Car seeks immediate relief from the Court by way of the First Day Motions, Nice Car will suffer immediate and irreparable harm if it is unable to obtain the services of counsel before a final hearing on application for approval of counsel is scheduled. Therefore, in order to avoid immediate and irreparable injury, Nice Car has requested that the Court grant interim approval of counsel's employment.

31. As detailed in the Silverman Application, Silverman is a licensed certified public accountant and has served as Nice Car's accountant for many years. Silverman has extensive knowledge of Nice Car's finances and is capable of assisting Nice Car in all of its reporting requirements.

32. Attorney Klapholz and his firm have represented Nice Car in various matters for over 25 years. There are currently two lawsuits pending where Nice Car is the plaintiff that

Klapholz is prosecuting. In addition, Klapholz has provided day-to-day advice over the years with compliance issues, disputes with customers, disputes with lenders, and other matters. Klapholz has also been involved extensively with the negotiations with Stirling, Dr. Tepper and the Ansaldis that took place prior to the filing of this case.

**B. Debtor's Emergency Motion for An Order Granting (A) Authority to Maintain Bank Accounts And To Continue To Use Existing Business Forms and Checks and (B) Waiver of Certain Deposit Guidelines ("Bank Account Motion")**

33. I understand from counsel that the United States Trustee has established certain operating guidelines for debtors-in-possession in order to supervise the administration of Chapter 11 cases. These guidelines require Chapter 11 debtors to close existing bank accounts and open new debtor in possession ("DIP") bank accounts including separate DIP accounts for the payment of payroll taxes and cash collateral.

34. In the Bank Account Motion, Nice Car seeks a waiver of these requirements so that its operations are not further disrupted by the need to redirect payments to new bank accounts. Nice Car's receivables are almost entirely comprised of payments made by its customers for whom Nice Car has financed the purchase of their vehicles.

35. On the Petition Date, Nice Car held four bank accounts, more specifically described as follows:

| | | |
|---|---|---|
| J.P. Morgan Chase Bank, N.A. | Main Operating Account Ending in 5576 | Balance on Petition Date $239,921.64 |
| J.P. Morgan Chase Bank, N.A. | Secured Party Loss Waiver ("SPLW") Account Ending in 5592 | Balance on Petition Date $13,743.00 |
| J.P. Morgan Chase Bank, N.A. | Customer Deposit Account Ending in 5618 | Balance on Petition Date $5,710.00 |
| J.P. Morgan Chase Bank, N.A. | Detail Building Account Ending in 5600 | Balance on Petition Date $4,674.84 |

36. To ensure a smooth transition into Chapter 11 with minimal disruption to Nice Car's business operation, the Debtor requests authority to maintain its existing bank accounts.

37. Nice car seeks a waiver of certain guidelines established by the United States Trustee including the waiver of the requirements to: (i) close existing bank accounts; (ii) open new DIP accounts; (iii) establish one DIP account for monies required for the payment of taxes including payroll taxes; (iv) maintain a separate DIP account for cash collateral; (v) obtain new checks bearing a designation of "debtor in possession," the bankruptcy case number and the type of account; and obtain new business forms bearing a designation of "debtor in possession."

38. Nice Car, in the ordinary course of its business, utilizes, checks, invoices, stationary, prescriptions, and other business forms. A substantial amount of time and expense would be required in order to print new checks and other business forms. Fulfillment of this requirement would likely delay payment of post-petition claims and interrupt Nice Car's ability to continue its regular business enterprise with the use of the regularly utilized business forms. For these reasons, Nice Car requests it be authorized to continue to use their existing bank accounts and business forms.

39. In addition to the foregoing, the maintenance of the SPLW and Customer Deposit bank accounts is essential for Nice Car's continued business. The Customer Deposit account is specifically set up to receive payments from customers. Customers are provided with information on this account, including the account number, so they may appear at a local Chase Manhattan branch and make a payment on their account. Customers may also make transfers into the account via ACH or through various smart phone apps or the Internet. The payments are then swept into Nice Car's main operating account at various intervals.

40. In my experience operating Nice Car, I have learned that giving customers more opportunities to make payments via methods such as the above increases cash flow by making the payment process quicker and more efficient. This also decreases the rate of default.

41. The SPLW account is also set up to receive payments directly from customers. However, it has a different purpose. Nice Car offers its customers the ability to waive the requirement that the customers carry collision and comprehensive coverage on their vehicles in exchange for payments to Nice Car. Any amounts the customers pay are initially deposited in the SPLW account and then swept to the Operating Account.

42. Both the SPLW and Customer Deposit Accounts were established so Nice Car would not have to give out its main operating account number to customers.

43. Nice Car recently opened the accounts at J.P. Morgan Chase Bank, N.A. ("Chase") after closing accounts at Bank of America. Nice Car went to great lengths to inform all of its customers of the change. It took a massive effort and great lengths to notify everyone who utilized either the Customer Deposit or the SPLW accounts at Bank of America that Nice Car was moving to Chase, and the move caused significant confusion with Nice Car's customers. Nice Car would prefer to avoid this expense a second time when it is not necessary.

44. The Detail Building account was established so that the persons operating the detail shop would be able to purchase supplies and materials without needing to seek approval for every transaction, most of which are very small. The account rarely has more than $15,000.00 in it at any one time, and when the balance exceeds that amount it is because something was needed that I approved.

45. I further understand that Section 345 of the Bankruptcy Code and the United States Trustee establish certain requirements with respect to deposits and investments of money of the estate. Nice Car believes that it maintains its accounts at stable U.S. banking institutions

9

which are FDIC insured and authorized depositories pursuant to 11 U.S.C. Section 345(b). Therefore, a waiver of the Section 345 deposit guidelines would not pose a risk to Nice Car's estate or its creditors.

46. I have been advised that relief similar to the relief requested in the Bank Account Motion has been granted in other Chapter 11 cases in this district. Therefore, I submit that authorizing the relief sought will be in Nice Car's and its creditors' best interest.

47. Nice Car seeks the relief requested in the Employee Motion because any delay in paying employee compensation will destroy Nice Car's relationships with the employees and irreparably impair employee morale at the very time when the dedication, confidence and cooperation of these employees is most critical. Nice Car faces the imminent risk that its operation may be severely impaired if Nice Car is not immediately granted authority to make the payments described in the Employee Motion. Employee support for Nice Car's reorganization efforts is crucial to the success of those efforts, particularly given the unique knowledge and skills of Nice Car's employees.

48. At this critical stage of this Chapter 11 case, Nice Car cannot risk the substantial disruption to is business operation and its ability to sell automobiles that would inevitably result from Nice Car's failure to pay employee compensation and payroll deductions in the ordinary course.

49. The amounts represented by employee compensation, benefits and deductions are needed to enable the employees to meet their own personal obligations. Absent the relief requested in the Employee Motion, the employees could suffer undue hardship and serious financial difficulties. Moreover, the Debtor's stability and business operation will be undermined if otherwise loyal employees at all levels seek other employment.

50. As of the Petition Date, the Debtor employed approximately 15 employees who together provide a number of services to the Debtor from administrative and clerical to medical support services. Nice Car's three salespeople are paid on straight commission. Six employees, including me, are in salaried positions, while the remainder are paid hourly. I have agreed to a reduction in my salary from pre-bankruptcy levels, and I had already lowered my salary from the levels it was at when Nice Car's business was more profitable. Stirling has always been aware of my salary and has never objected to same.

**C. Debtor's Emergency Motion for Order (I) Authorizing the Debtor (A) to Use Cash Collateral (A) To Use Cash Collateral on an Interim Basis Pursuant to 11 U.S.C. § 363, and (B) to Grant Adequate Protection in Connection Therewith Pursuant to 11 U.S.C. §§ 361, and 363, and (II) Schedule a Final Hearing Under Bankruptcy Rule 4001**

51. Nice Car filed the Cash Collateral Motion to request that the Court enter an interim order, a form of which is proposed and attached to the Cash Collateral Motion. The Cash Collateral Motion also requests a final hearing and the entry of a Final Order thereafter.

52. I am informed by counsel that it is necessary to provide certain disclosures to conform with Federal Rule of Bankruptcy Procedure 4001(b), Local Rules 4001-2, 9013-1(F) and (G) and the Guidelines. The disclosures are set forth in the Cash Collateral Motion and I adopt them as if set forth herein.

53. In the interest of brevity I have not included every detail of the agreement with Stirling on cash collateral, but the details are set forth in the Cash Collateral Motion. Nice Car has negotiated the terms of the use of cash collateral with Stirling and is in agreement with the conditions contained in the Cash Collateral Motion and proposed order.

54. Through the Cash Collateral Motion, Nice Car seeks to utilize cash collateral to maintain its business. Nice Car's request for use of cash collateral is meant to cover Nice Car's essential expenses contained in the Budget and to ensure seamless continued operations to allow

Nice Car to promptly file a plan of reorganization. Those expenses include payment of wages, taxes, insurance and other expenses.

55. Nice Car requests authorization to use of the cash collateral through the time that Nice Car emerges from chapter 11 under a confirmed plan or until further order of the Court.

56. Stirling, through its counsel and its representatives, has consented to the use of cash collateral for the payment of the pre-petition wages to the extent approved by the Court.

57. Unless authorized to use the cash received in the ordinary course of business, Nice Car will be unable to remain in business. Nice Car will be unable to maintain its employees which are required to continue to sell automobiles to the public. Moreover, without use of the cash collateral, Nice Car will default on its contracts and will have almost no chance of recovering its receivables. This scenario would eliminate any chance to reorganize Nice Car's business.

58. I believe that is essential to continue operation of Nice Car's business the Debtor be authorized to utilize cash collateral as set forth in the Cash Collateral Motion. Unless the Cash Collateral Motion is approved on an interim basis, Nice Car will be unable to pay its employees and ongoing necessary business expenses including medical suppliers and other obligations which would have a devastating effect on Nice Car's operation.

59. Thus, in the absence of immediate relief, Nice Car's attempt to continue its business in the ordinary course will be immediately and irreparably jeopardized and Nice Car may be forced to shut down its business. Accordingly, I believe that Nice Car and its creditors face a substantial risk of immediate and irreparable harm if the relief sought in the Cash Collateral Motion is not permitted on an interim basis as well as a final basis. For these reasons, I belief it is in the best interest of Nice Car, its estate, its creditors and interested parties that the relief requested in the Cash Collateral Motion be granted.

**D. Debtor's Emergency Motion For Order (I) Authorizing Debtor To Pay (A) Certain Prepetition Employee Obligations; And (B) Prepetition Withholding Obligations, And (Ii) Directing Banks To Honor Related Prepetition Transfers.**

60. Nice Car seeks the relief requested in the Employee Motion because any delay in paying employee compensation will destroy the Debtor's relationships with the employees and irreparably impair employee morale at the very time when the dedication, confidence and cooperation of these employees is most critical. Nice Car faces the imminent risk that its operation may be severely impaired if Nice Car is not immediately granted authority to make the payments described in the Employee Motion. Employee support for Nice Car's reorganization efforts is crucial to the success of those efforts, particularly given the unique knowledge and skills of Nice Car's employees.

61. At this critical stage of this Chapter 11 case, Nice Car cannot risk the substantial disruption to is business operation and its ability to provide patient care that would inevitably result from Nice Car's failure to pay employee compensation in the ordinary course. Absent the relief requested in the Employee Motion, the employees could suffer undue hardship and serious financial difficulties. Moreover, Nice Car's stability and business operation will be undermined if otherwise loyal employees at all levels seek other employment.

62. As of the Petition Date, Nice Car employed approximately 15 employees who together provide a number of services to Nice Car from administrative and clerical to sales and management services. I receive a weekly salary for my services. There are three salespeople who are paid on commission, three are managers who are paid salary, two porters/lot attendants who are paid hourly, and six clerical employees, four of whom are paid hourly wage employees while six are salaried employees.

## III. Debtor's Objective in This Proceeding.

63.     The primary purpose of the filing of this Chapter 11 case is to restructure Nice Car's financing and certain other financial burdens and emerge from bankruptcy as a viable going-concern and maximizing the value of Nice Car's assets for creditors of the estate. Nice Car will strive to restructure and propose and consummate a Chapter 11 plan of reorganization. In the interim, through the motions described above and other motions and applications Nice Car may need to file shortly after the Petition Date, Nice Car hopes to minimize the adverse effect that the filing of this Chapter 11 case might otherwise have on its business. For all of these reasons, I respectfully request that this Court grant the relief requested in each of the First Day Motions filed concurrently herewith.

64.     To successfully reorganize, Nice Car's immediate objective is to maintain "business as usual" following the commencement of this case by minimizing the adverse effect of the impact of the filing of this Chapter 11 case on Nice Car's operation. This will protect the interest of Nice Car's employees and creditors. For the reasons stated herein and in the First Day Motion, I believe that the prospect for achieving these objectives for the benefit of the creditors and stakeholders will be substantially enhanced if the Court grants the relief requested in the First Day Motions.

## 28 U.S.C. § 1746 Declaration

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge and belief.

NICE CAR, INC.

By: _____
Steve Kerzer, President

4/26/17
Date

14

Dated this 26th day of April, 2017.

                                      **SLATKIN & REYNOLDS, P.A.**
                                      Proposed Attorneys for Debtor
                                      One East Broward Boulevard, Suite 609
                                      Fort Lauderdale, Florida 33301
                                      Telephone 954.745.5880
                                      Facsimile 954.745.5890
                                      rreynolds@slatkinreynolds.com

                                  By: /s/ Robert F. Reynolds
                                      ROBERT F. REYNOLDS
                                      Fla. Bar No. 174823

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been furnished via the Court's CM/ECF electronic noticing system to Office of the US Trustee, USTPRegion21.MM.ECF@usdoj.gov; Eric N. Assouline, Esq., ena@assoulineberlowe.com, ah@assoulineberlowe.com and all other parties entitled to receive notice via the Court's CM/ECF noticing system and via email to John B. Agnetti, Esq., john@hlalaw.com; Mark A. Goldstein, Esq., markgoldsteinattorney@gmail.com; Michael Friedman, Esq., friedman@chapman.com and Aaron M. Krieger, Esq., akrieger@chapman.com on this 26th day of April, 2017.

                                              /s/ Robert F. Reynolds
                                            ROBERT F. REYNOLDS